2004 UT App 285

Daniel L. ROBINSON, Plaintiff and Appellant,

v.

Waunita MORROW, Defendant and Appellee.

No. 20030346–CA.

Court of Appeals of Utah.

Aug. 26, 2004.

Stephen W. Cook, Cook & Davis, Salt Lake City, for Appellant.

Clifford J. Payne and Michael D. Lichfield, Nelson, Chipman, Quigley & Hansen, Salt Lake City, for Appellee.

Before BENCH, Associate P.J., GREENWOOD, and JACKSON, JJ.

## OPINION

JACKSON, Judge:

¶ 1 Daniel L. Robinson appeals the district court's grant of summary judgment to Wuanita Morrow. We reverse.

## BACKGROUND

¶ 2 In reviewing a grant of summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Hill v. Allred*, 2001 UT 16, ¶ 12, 28 P.3d 1271 (quotation and citation omitted).

¶ 3 On October 7, 1995, a letter was sent to various persons in Robinson's neighborhood from the "Child Abuse Helpline and Prevention Center" (the Center). The letter described the Center as a "non-descript, innocuous child hotline" providing "community support" and protection for "the rights of children everywhere." No contact information was provided for the Center, nor was any return address listed on the envelope. According to the Center's letter, Robinson had "both physically abused and molested" his step-children. The letter then indicated that his children might be in "peril," and thus encouraged its recipients to ask Robinson's children about the alleged abuse. As a result of the stress and humiliation arising from this letter, Robinson became physically ill and was ultimately required to seek professional counseling.

¶ 4 Morrow and Robinson are siblings. At the time that the letter was sent, Robinson was scheduled to testify as a witness against Morrow's husband in a pending civil suit. As such, Robinson initially suspected that Morrow might have written the letter either out of retaliatory spite or as part of an effort to discredit him prior to the trial. Given that his relationship with Morrow was already strained, Robinson approached a second sister, Wanda Jo Smith, in October 1995 and asked her to contact Morrow to determine whether Morrow had written the letter. Sometime thereafter, Smith informed Robinson that Morrow had not written the letter.

¶ 5 In a further effort to ascertain the identity of the letter's author, Robinson first examined the telephone directory and was not able to find an entry for the Center. Robinson then contacted the telephone company directly and was told by the telephone company that there was no listing for the Center. Robinson next contacted the United States Postal Service. The Postal Service referred him to an investigator in Denver with responsibility for such matters. Robinson left two messages on the investigator's telephone that were not returned. Finally, Robinson contacted the attorney responsible for the suit against Morrow's husband and asked him to investigate the authorship of the letter. After a short investigation, the attorney provided Robinson with a letter that stated that his office staff had used the internet and a CD–ROM phone directory of the United States, Canada, and South America but still could not find the organization in question.

¶ 6 In the fall of 1997, Morrow's sixteen-year-old son, Destry Brady, visited Robinson's home.[1] On that occasion, according to Robinson's deposition, Brady "blurted it out that every time the family gets together they talk about the letters and, mom, why did you write them?" Believing that Brady would not be a credible witness in court, however, Robinson took no legal action against Morrow at that time.

¶ 7 Later, in two different telephone conversations during October 2000, Smith informed Robinson that Morrow had confessed authorship of the letter to her. Believing Smith to be a credible witness, Robinson filed suit against Morrow on February 14, 2001. In that suit, Robinson alleged three causes of action: libel, intentional infliction of emotional distress, and invasion of privacy.

¶ 8 Morrow moved for summary judgment, arguing that Robinson's claims were barred by the applicable statutes of limitations.

Robinson responded to this motion by arguing that, under the discovery rule, the statutes of limitations should have been tolled until he was able to verify the identity of the letter's author. The district court agreed with Morrow and entered a ruling granting summary judgment to Morrow, thereby dismissing all three of Robinson's claims. Robinson now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Robinson argues that the trial court erred in failing to apply the discovery rule to the present case. The applicability of the discovery rule is a question of law and reviewed for correctness. *See Spears v. Warr,* 2002 UT 24, ¶ 32, 44 P.3d 742.[2] We hold that in this case, where the identity of the defendant was fraudulently concealed, the discovery rule operates to preserve each of the claims raised by Robinson.

## ANALYSIS

### I. Application of the Discovery Rule in Cases of Unknown Tortfeasor Identity

¶ 10 Generally, the statute of limitations in tort begins to run once all of the elements of the tort have occurred; yet, "there are situations where, for equitable reasons, we have held that a statute does not run until the plaintiff knows or has reason to know that he or she has a cause of action." *Allen v. Ortez,* 802 P.2d 1307, 1313 (Utah 1990) (citation omitted). Under this so-called "discovery rule," "the limitations period does not begin to run until the discovery of facts forming the basis for the cause of action." *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981) (citation omitted). As noted by our supreme court, "the policy behind the discovery rule [is] that potential plaintiffs should not be barred from suit if they did not know

---

1. Neither Robinson nor Morrow has been able to clarify when the Destry conversation exactly occurred. Both parties have conceded, however, that the conversation occurred in the fall of 1997. Because the relevant questions are easily settled without resort to further specificity, we accept the parties' contentions of the relative date of this conversation.

2. To avoid confusion, it should be noted that applying the discovery rule may also involve factual findings to determine whether the plaintiff knew or should have reasonably known that his cause of action had accrued. Although not applicable to this case, such factual determinations are reviewed only for clear error. *See Spears,* 2002 UT 24 at ¶ 32, 44 P.3d 742.

and could not reasonably have known of the underlying facts giving rise to a cause of action." *Allen*, 802 P.2d at 1313–14.

¶ 11 The initial question before us is whether the discovery rule tolls a statute of limitations where a plaintiff does not know the identity of the tortfeasor. In answering this question, we must therefore determine whether the identity of the tortfeasor should be considered an "underlying fact" that "giv[es] rise to a cause of action." *Id.*

¶ 12 Though there are multiple Utah cases that have applied the discovery rule to situations where the plaintiff did not know of his or her *injury* prior to the expiration of the statute of limitations, *see, e.g., Warren v. Provo City Corp.*, 838 P.2d 1125, 1129 (Utah 1992), there have been no Utah cases that have addressed the question of whether the discovery rule likewise tolls statutes of limitations where the plaintiff did not know the *identity* of the tortfeasor. As such, the question before us is one of first impression in Utah courts. When confronted with questions of first impression, it is appropriate to look to cases from other jurisdictions for guidance. *See Arndt v. First Interstate Bank of Utah*, 1999 UT 91, ¶ 17, 991 P.2d 584.

¶ 13 This precise question was addressed by the Wisconsin Supreme Court in *Spitler v. Dean*, 148 Wis.2d 630, 436 N.W.2d 308 (1989). In *Spitler*, the plaintiff filed suit against the defendant for assault and battery. *See id.* at 309. Though the plaintiff's claim would normally have been barred by the applicable statute of limitations, the plaintiff argued at trial and on appeal that the discovery rule should be applied to toll the statute of limitations due to the fact that he had not discovered the identity of the tortfeasor until over a year after the alleged assault. *See id.* In reversing an order of dismissal that had been entered by the trial court, the Wisconsin Supreme Court concluded that the discovery rule should be applied to such situations because "the identity of the tortfeasor is a critical element of an enforceable claim." *Id.* at 310 (citation omitted). As such, the *Spitler* court concluded that "[t]he public policy justifying the accrual of a cause of action upon the discovery of the injury and its cause applies equally to the discovery of the identi-ty of the defendant in this case." *Id.* Setting forth the new rule, the court accordingly held that "[t]he statute [of limitations] should not commence to run until the plaintiff with due diligence knows to a reasonable probability of injury, its nature, its cause, *and the identity of the allegedly responsible defendant.*" *Id.* (quotation and citation omitted).

¶ 14 In *Bernson v. Browning–Ferris Industries of California, Inc.*, 7 Cal.4th 926, 30 Cal.Rptr.2d 440, 873 P.2d 613 (1994), the California Supreme Court addressed the question of whether the discovery rule should apply in situations where the plaintiff's ignorance of the tortfeasor's identity is a result of the defendant's active concealment of that identity. In *Bernson*, a member of the Los Angeles City Council sued a corporation for its involvement in the preparation and circulation of an allegedly defamatory writing. *See id.* 30 Cal.Rptr.2d 440, 873 P.2d at 614. Although the plaintiff had discovered the existence of the writing in time to have filed suit under the applicable statute of limitations, he did not discover the identity of the author until after the statute of limitations had expired. *See id.* The trial court had held that the resultant lawsuit was barred by the statute of limitations. *See id.*

¶ 15 On appeal, the California Supreme Court first noted that "the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute." *Id.* 30 Cal.Rptr.2d 440, 873 P.2d at 616. However, after analyzing both the facts of the case before it and the various treatments of this question that had been issued by other courts, *see id.* 30 Cal.Rptr.2d 440, 873 P.2d at 616–19, the *Bernson* court ultimately concluded that principles of equity mandate a tolling of the statute of limitations until "such time that the plaintiff knows, or through the exercise of reasonable diligence should have discovered, the defendant's identity." *Id.* 30 Cal.Rptr.2d 440, 873 P.2d at 619.

¶ 16 The *Bernson* court's discussion of the competing principles of equity is particularly noteworthy.

> The question here ... is whether the general rule should apply when, as a result of the defendant's intentional concealment,

the plaintiff is not only unaware of the defendant's identity, but is effectively precluded as a practical matter from ascertaining it through normal discovery procedures. May a thief, for example, who leaves no clues to his identity defeat an action by the rightful owner to recover the stolen property if the owner fails to find and serve the culprit within the applicable limitations period?

*Id.* 30 Cal.Rptr.2d 440, 873 P.2d at 617. In answering this question, the *Bernson* court noted with approval the conclusion of the Seventh Circuit that "a plaintiff cannot be said to have 'discovered' his cause of action until he learns enough facts to form its basis, which must include the fact that the [property is] being held by another and who, or at least where, that 'other' is." *Id.* (quoting *Autocephalous Church v. Goldberg & Feldman Arts,* 917 F.2d 278, 289 (7th Cir.1990)). Accepting this reasoning, the *Bernson* court ultimately concluded that "where the [statute of limitations] becomes a sword rather than a shield, wielded by a party that has intentionally cloaked its identity, factors of fairness and unjust enrichment come into play, which courts are bound to consider in equity and good conscience." *Id.* 30 Cal.Rptr.2d 440, 873 P.2d at 618.

¶ 17 We are persuaded by the reasoning of the *Spitler* and *Bernson* courts. We simply see no legitimate reason why the principles of equity that protect a plaintiff who is initially unaware of an injury should not similarly be extended to protect a plaintiff who is initially unaware of the identity of the tortfeasor. In cases of intentional concealment, the desirability of extending the discovery rule to such situations is even more compelling. To hold otherwise would be to create a perverse incentive for tortfeasors to actively conceal their involvement from their victim as a means of avoiding liability. Such a result simply cannot be countenanced.

¶ 18 In short, we think it clear that a plaintiff who is legitimately ignorant of the tortfeasor's identity lacks the ability to effectively prosecute a civil suit. This ignorance would severely hamper that plaintiff's ability to prepare for trial.

■ ¶ 19 In the present case, we are not asked to create a new rule; rather, we are simply asked to determine whether an already accepted rule should be applied to a new circumstance. After reviewing the facts of this case and considering the applicable principles of equity, we conclude that the discovery rule should be extended to cover such circumstances. Accordingly, we hold the discovery rule should be applied to situations wherein the plaintiff can show that he or she did not know the identity of the tortfeasor after conducting a reasonable investigation.

II. Fraudulent Concealment as a Basis for Applying the Discovery Rule

■ ¶ 20 It is well-accepted that the discovery rule is generally applicable to cases of defamation or libel. *See Russell v. Standard Corp.,* 898 P.2d 263, 264–65 (Utah 1995); *Allen v. Ortez,* 802 P.2d 1307, 1313–14 (Utah 1990). Under Utah law tolling the statute of limitations is proper

(1) in situations where the discovery rule is mandated by statute; (2) in situations where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct; and (3) in situations where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Warren v. Provo City Corp.,* 838 P.2d 1125, 1129 (Utah 1992) (citation omitted). Robinson argues that the applicable statutes of limitations should have been tolled under the fraudulent concealment version of the discovery rule. He does not argue that the discovery rule is mandated by any statute applicable to any of his three claims, nor does he suggest the exceptional circumstances version of the discovery rule should be applied here.

■ ¶ 21 According to the supreme court, the fraudulent concealment version of the discovery rule applies "when a plaintiff alleges that a defendant took affirmative steps to conceal the plaintiff's cause of action." *Berenda v. Langford,* 914 P.2d 45, 51

(Utah 1996). In such a situation, the discovery rule will be held applicable if the plaintiff can make "a prima facie showing of fraudulent concealment and then demonstrat[e] that given the defendant's actions, a reasonable plaintiff would not have discovered the claim earlier." *Id.* Once the plaintiff has made this prima facie showing of concealment, then the trial court is precluded from entering a summary judgment ruling based on the statute of limitations "in all but the clearest of cases." *Id.* at 54. If the question as to the plaintiff's knowledge is "a close call," then the court is not permitted to dismiss the claim on summary judgment. *Id.* (quotation and citation omitted). "Such close calls are for juries, not judges to make." *Id.* (quotation and citation omitted); *see also Hill v. Allred,* 2001 UT 16,¶ 20, 28 P.3d 1271 ("Distinguishing among these conflicting stories is precisely the type of fact-finding that ... [is] inappropriate for this court, or indeed for the trial judge on summary judgment.") (citation omitted). Thus, "[u]nder the concealment prong, a defendant who misleads the plaintiff is, in essence, estopped from asserting the statute of limitations as a defense to the claim." *Anderson v. Dean Witter Reynolds, Inc.,* 920 P.2d 575, 578 (Utah Ct.App.1996) (citation omitted).

■ ¶ 22 Applied to the present case, we first conclude that Robinson has made a prima facie case of concealment by Morrow. Viewing "the facts and all reasonable inferences drawn therefrom in the light most favorable" to Robinson, *Hill,* 2001 UT 16 at ¶ 12, 28 P.3d 1271 (quotation and citation omitted), we conclude that Robinson has made a prima facie case of concealment. Under this standard of review, Robinson has shown that Morrow has admitted to writing a potentially libelous letter, that Morrow then distributed the letter to Robinson's friends and neighbors, and that Morrow then denied writing the letter when initially asked about it by Robinson's intermediary. In addition to her early denials, the evidence shows that Morrow further attempted to obfuscate her role in the writing of the letter by attributing it to a nonexistent entity, and by then deliberately failing to provide any contact information with which one could trace the organization or the letter to her. At the very least, these actions do constitute the requisite "affirmative steps" that are at the heart of a concealment claim. *Berenda,* 914 P.2d at 51.

¶ 23 We further conclude that Robinson has put forth sufficient evidence to show that he conducted a reasonable investigation to determine the identity of the letter's author. Robinson presented evidence showing that he: (1) consulted a phone directory to find any information on the Center; (2) contacted the telephone company seeking any information on the Center; (3) contacted the police for assistance in locating the Center; (4) contacted the United States Postal Service in an effort to locate the Center; (5) enlisted the assistance of an attorney in an effort to locate the Center; and (6) approached the suspected author, Morrow, through an intermediary in an effort to determine whether she was the source of the letter. In short, we conclude that Robinson's efforts to determine the identity of the letter's author were reasonable. Accordingly, we conclude that the fraudulent concealment version of the discovery rule should have been applied to the present case.

■ ¶ 24 Because Robinson has successfully set forth a prima facie case of fraudulent concealment, we are thus faced with the final task of determining when he knew, or reasonably should have known, of Morrow's involvement with the letter. In making our determination, we rely on equitable considerations and emphasize that a party who has intentionally cloaked its identity should not benefit from the concealment. *See Bernson v. Browning–Ferris Indus. of Cal., Inc.,* 7 Cal.4th 926, 30 Cal.Rptr.2d 440, 873 P.2d 613, 619 (1994). Thus, the statute of limitations does not begin to run merely because the plaintiff may have suspected the defendant was involved.[3] Rather, we hold that the

---

3. Under Rule 11 of the Utah Rules of Civil Procedure, a claim based on mere suspicion is not proper. Rule 11 requires the plaintiff's attorney to certify that "the allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Utah R. Civ. P. 11(b)(3). Although this rule sets a relatively low standard requiring some factual basis after a reasonable inquiry, *see Morse*

limitations period is tolled to the point at which the plaintiff receives reliable and precise information sufficient to give reasonable assurance that the defendant is in fact the tortfeasor. *See id.* 30 Cal.Rptr.2d 440, 873 P.2d at 619. Such a reasonable assurance exists when factual evidence points directly to the defendant or indicates that the discovery process may provide fruitful information regarding the defendant's identity. *See id.* 30 Cal.Rptr.2d 440, 873 P.2d at 619.

¶ 25 In this case, we conclude the statute of limitations was tolled until October 2000 when Smith informed Robinson that Morrow had allegedly confessed to writing the letter. Smith's information essentially provided a breakthrough in Robinson's investigation, giving him a reliable and precise factual basis for his suspicions. Despite alleged efforts at concealment, Robinson knew or reasonably should have known at this point that Morrow was likely involved with the letter or, at the least, that Morrow would probably have discoverable information. As a result, Robinson possessed all of the facts necessary for his cause of action, and, accordingly, for the statutes of limitations to begin running.

¶ 26 Prior to October 2000, the information Robinson had uncovered was inapposite and did not provide facts sufficient to give him a reasonable knowledge of Morrow's involvement. The events of 1995, including the original letter, Robinson's subsequent investigation, and the inquiries by Smith, all may have raised Robinson's suspicions with regard to Morrow, but these efforts produced no facts indicating she was the alleged tortfeasor. It also appears that in 1997 Morrow's son Brady uttered something regarding his suspicions about his mother. Although Brady's comment may have further heightened Robinson's own suspicions, his statement, if considered one, is highly ambiguous and does not provide the type of reliable, precise information that would necessarily lead a reasonable person to conclude Morrow was involved. Nor is it likely that Brady's statement provides reasonable factu-

al support for asserting that either he or his mother possessed discoverable information.

¶ 27 Under Utah Code section 78–12–29(4), claims for libel are subject to a one-year statute of limitations. *See* Utah Code Ann. § 78–12–29(4) (2003). The torts of intentional infliction of emotional distress and invasion of privacy, however, are both governed by the four-year statute of limitations set forth in Utah Code section 78–12–25(3). *See* Utah Code Ann. § 78–12–25(3) (2003). Because each of these claims were timely filed on February 14, 2001, the trial court erred when it granted Morrow's motion for summary judgment.

## CONCLUSION

¶ 28 We hold that the discovery rule applies to situations in which the plaintiff did not know the identity of the tortfeasor until a later date. We further conclude that, insofar as Robinson has set forth a prima facie case of fraudulent concealment, the applicable statutes of limitations were tolled until he knew or should have known of the identity of the tortfeasor. Because Robinson was not informed of Morrow's authorship until October 2000, his claims for libel, intentional infliction of emotional distress, and invasion of privacy were each timely filed. Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.

¶ 29 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, and PAMELA T. GREENWOOD, Judge.

v. *Packer,* 2000 UT 86, ¶ 28, 15 P.3d 1021, a plaintiff may be sanctioned for bringing a claim merely "founded on innuendo and suspicion,"

*Griffith v. Griffith,* 959 P.2d 1015, 1022 (Utah Ct.App.1998), *aff'd,* 1999 UT 78, 985 P.2d 255 (upholding sanctions).