2008 UT App 147

**Brianne CAMMACK–WHITE, Craig Cammack, and Sharon Cammack, Petitioners and Appellants,**

v.

**Jason HARBAUGH, Respondent and Appellee.**

No. 20070168–CA.

Court of Appeals of Utah.

April 24, 2008.

Heather M. Jensen, Richfield, for Appellants.

Diana J. Huntsman, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 A juvenile court awarded Jason Harbaugh (Father) attorney fees and costs in a child protective order case brought by Brianne Cammack–White, Sharon Cammack, and Craig Cammack (collectively, the Cammacks). We affirm in part and remand in part.

## BACKGROUND

¶ 2 O.H. was born on April 21, 2001, to Brianne Cammack–White (Mother) and Father. When O.H. was about eleven months old, Sharon and Craig Cammack (Mother's grandparents)-with whom Mother had resided off and on since she was fifteen-grew increasingly concerned about Mother's lifestyle, including her abusive relationship with her boyfriend, and her substance abuse problems. The Cammacks met with Father and his family and agreed to seek a change in temporary custody of O.H.; the child was moved into Father's home around May 2002.

¶ 3 Father, who initiated a paternity suit against Mother, was awarded temporary physical custody of O.H. on July 29, 2003. As part of that order, a custody evaluation was performed. That evaluation recognized Mother's grandparents' informal accusations that Father had sexually abused O.H. and that he was using illegal drugs to obtain sexual favors from young women like Mother. The report nonetheless recommended that Father obtain legal custody of O.H. and that Mother be allowed supervised visits every other week for six weeks, followed by weekly supervised visits.

¶ 4 Three years later, the Cammacks filed an ex parte petition for a child protective order against Father, seeking a change of custody of O.H. and alleging abuse. Mother's grandparents took O.H. to the Manti office of the Division of Child and Family Services (DCFS) on July 12, 2006, claiming that O.H. had told them and a neighbor that Father had sexually abused her. In a memorandum accompanying the petition, DFCS noted that Mother's grandparents had reported similar allegations on June 5, 2006, which had been unsubstantiated. DCFS explained how in an interview resulting from the July allegation, O.H. described not feeling safe at Father's home and, after some prompting, said that Father forced her to perform oral sex and that she had seen Father and his current girlfriend engage in oral sex. The Cammacks made additional allegations of abuse—both physical and sexual—against Father in the petition.

¶ 5 The juvenile court heard arguments on the Cammacks' Verified Petition for Child Protective Order, as well as on Father's motion for a change of venue to a Third District court from a Sixth District court. O.H.'s guardian ad litem (GAL) recommended that the ex parte protective order be dismissed

and that a member of Father's family receive temporary custody of O.H. The juvenile court granted the change of venue motion, denied Mother's request for temporary custody (Mother's grandparents obtained temporary custody), and put in place a visitation schedule for Father to visit O.H. weekly.

¶ 6 After the case was transferred to the Third District, Father filed a motion requesting an order to show cause (OSC), arguing that the Cammacks had not abided by the juvenile court's visitation order. On October 16, 2006, the district court entered a paternity order, awarding Father child support and full legal and physical custody of O.H.[1] Subsequently, the juvenile court held another hearing regarding the Cammacks' petition for a protective order. At that hearing, O.H.'s GAL conveyed a belief "that there was insufficient evidence to warrant a protective order." Upon hearing this, Father's counsel moved for attorney fees under rule 37 of the Utah Rules of Juvenile Procedure.

¶ 7 The juvenile court denied the Cammacks' petition for a child protective order, finding "that there ha[d] not been sufficient evidence to prove ... by a preponderance of the evidence [that O.H.] ha[d] been abused." Additionally, the juvenile court ordered O.H. "to be returned to ... [F]ather['s custody] immediately." The juvenile court then scheduled a hearing to address Father's request for an OSC and his rule 37 motion.

¶ 8 In the intervening months, Father's attorney presented affidavits detailing her legal services, respective hours, billings, and expenses. The Cammacks' counsel was given time and took advantage of the opportunity to respond to the rule 37 motion both in writing and at the hearing on both the OSC and rule 37 motion. At the hearing, Father's attorney argued that "all of the different things that have happened, including coaching [O.H.], ... all play into why [the Cammacks'] actions weren't reasonable, and why it is very appropriate for the [c]ourt to enter [an award of] attorney fees, [and] to enter an award for contempt because that mindset is relevant." Neither party presented the juve-

nile court with the definition of the term "without merit" as used in rule 37, either at the hearing or in their subsequent written motions. In a written order, the juvenile court ruled in favor of Father respecting his request for an OSC. Specifically, the court found that Mother's grandparents "willfully and knowingly failed to follow the [August 15, 2006] visitation order and refused to do so on September 9, 2006 .... by failing to bring [O.H.] for her visit [with Father]." In the same order, the juvenile court granted Father's rule 37 motion, awarding Father attorney fees and costs by finding "the fees request[ed] to be reasonable." The Cammacks appeal only the award of attorney fees and costs.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 The Cammacks argue that the juvenile court improperly awarded attorney fees and costs to Father under rule 37(d) of the Utah Rules of Juvenile Procedure, *see* Utah R. Juv. P. 37(d). We review the juvenile court's application of rule 37(d) for correctness. *See In re S.M.,* 2007 UT 21, ¶ 15, 154 P.3d 835 (citing *In re Fox,* 2004 UT 20, ¶ 5, 89 P.3d 127); *see also Jeschke v. Willis,* 811 P.2d 202, 203 (Utah Ct.App.1991) (holding that the district court's ruling that a claim is without merit "is a question of law, and therefore we review it for correctness").

¶ 10 The Cammacks also argue that the assessment of attorney fees and costs is improper because the legislature provided immunity to those who report allegations of abuse. "Because the interpretation of [a statute] is an issue of law, we review the decision below for correctness." *Munson v. Chamberlain,* 2007 UT 91, ¶ 6, 173 P.3d 848 (citing *State v. Burns,* 2000 UT 56, ¶ 15, 4 P.3d 795).

■ ¶ 11 Finally, the Cammacks contend that the attorney fees and costs awarded were unreasonable. "[A] trial court has 'broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-dis-

---

1. The paternity action was a separate but parallel proceeding in Third District Court in West Jordan, Utah.

cretion standard.'" *Jensen v. Sawyers*, 2005 UT 81, ¶ 127, 130 P.3d 325 (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988)).[2]

## ANALYSIS

### I. Adequacy of the Juvenile Court's Rule 37(d) Findings

¶ 12 Rule 37(d) of the Utah Rules of Juvenile Procedure states that "[i]f the court finds that the [allegation of child abuse] is without merit, respondent's costs and attorney[ ] fees may be assessed against the petitioner." Utah R. Juv. P. 37(d). The Cammacks claim that since the juvenile court found, in effect, their claims to be "unsubstantiated," it erred by awarding Father attorney fees and costs. "Terms in [the Utah Rules of Juvenile Procedure] have the same definitions as provided in . . . [s]ection 78–3a–103 [of the Utah Code]. . . ." *Id.* R. 5. Accordingly, the term "without merit" is statutorily defined as "a judicial finding[ ] that the alleged abuse, neglect, or dependency did not occur, or that the alleged perpetrator was not responsible for the abuse, neglect, or dependency." Utah Code Ann. § 62A–4a–101(35) (2006); *see also* Utah Code Ann. § 78–3a–103(1)(hh) (Supp.2007) (current version at Utah Code Ann. § 78A–6–105(34)) (incorporating definition given in section 62A–4a–101). By contrast, the term "unsubstantiated" under the statute "means a judicial finding that there is insufficient evidence to conclude that abuse or neglect occurred." Utah Code Ann. § 62A–4a–101(33); *see also* Utah Code Ann. § 78–3a–103(1)(gg) (current version at Utah Code Ann. § 78A–6–105(33)) (incorporating definition given in section 62A–4a–101). However, the term "unsubstantiated" is not referenced in the rule. Moreover, unlike the general civil statute regarding attorney fees, parties in a juvenile court setting need not prove bad faith. *Compare* Utah Code Ann. § 78–27–56(1) (2000) (current version at Utah Code Ann. § 78B–5–825(1)) ("In civil actions, the court shall award reasonable attorney[ ] fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith . . . ."), *with* Utah R. Juv. P. 37(d) (requiring only a determination that the allegation be without merit). Thus, we focus our analysis on whether the juvenile court's ruling satisfies the definition of "without merit" in the rule.

¶ 13 In granting Father's rule 37(d) motion, the juvenile court stated:

> [T]he [c]ourt notes that Utah Rule of Juvenile Procedure Rule 37 allows for the [c]ourt to assess [Father's] cost[s] and attorney[ ] fees against the [Cammacks] if the [c]ourt finds that the petition is without merit. On October 20, 2006[,] this court dismissed the Ex[ ]parte Protective Order issued August 15, 2006[,] and denied issuing the Child Protective Order due to the insufficiency of the evidence presented. [Father] has requested attorney[ ] fees which are allowed under the rule.

On appeal, the Cammacks do not challenge the findings of the juvenile court but argue that, as a matter of law, the findings do not satisfy the definition of the term "without merit" as used in rule 37. The juvenile court did not explicitly state that it found that the Cammacks' alleged abuse by Father "did not occur, or that [Father] was not responsible for the abuse."[3] *See* Utah Code Ann.

---

**2.** Additionally, the Cammacks argue that the award of attorney fees and costs is against public policy. However, this issue was not preserved below; thus, we decline to address it. *See In re T.M.*, 2003 UT App 191, ¶ 24, 73 P.3d 959.

**3.** We note that the findings here would nonetheless likely support the common law definition of without merit. In *Valcarce v. Fitzgerald*, 961 P.2d 305 (Utah 1998), the Utah Supreme Court examined whether a party's claims were without merit for the purposes of awarding attorney fees. *See id.* at 315. "Although the [plaintiffs'] claims may have had some basis in law and they ostensibly provided evidence of their factual claims, the trial court found the facts to be contrary to that evidence." *Id.* Thus, the supreme court held that the trial court had properly found the claims to be meritless. *See id.* "A claim is without merit if it is 'frivolous,' is 'of little weight or importance having no basis in law or fact,' or 'clearly [lacks a] legal basis for recovery.'" *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 30, 61 P.3d 1009 (alteration in original) (quoting *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983)). "The fact that the case went to trial does not change the fact that [a plaintiffs]'s case lacked any merit." *Id.*

§ 62A–4a–101(35). However, neither party brought section 62A–4a–101(35) to the attention of the juvenile court prior or subsequent to the court's awarding attorney fees and costs to Father. Rather than apprise the juvenile court that the findings did not address the definition of without merit as used in the rule, which resulted in the conclusion that Father was entitled to attorney fees and costs, the Cammacks objected to the award only on the bases of statutory immunity and unreasonableness. *See 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶¶ 51–56, 99 P.3d 801 (discussing the perseveration requirement that the issue must have been specifically raised below). Therefore, we decline the Cammacks' invitation to reverse.

¶ 14 Nonetheless, "[i]f an appellate court determines that findings of fact are insufficient to support a necessary legal conclusion, the appellate court will normally remand the matter for further proceedings." *Jeffs v. Stubbs,* 970 P.2d 1234, 1242 (Utah 1998). "Part of the trial court's function in attorney fee deliberations depends on an understanding and proper interpretation of the applicable legal standard." *Utahns for Better Dental Health–Davis, Inc. v. Rawlings,* 2007 UT 97, ¶ 7, 175 P.3d 1036; *see also United States v. Hendershot,* 614 F.2d 648, 653 (9th Cir.1980) (finding error "because of the possibility that the trial court applied [an] improper legal standard"); *State v. Wight,* 765 P.2d 12, 19 (Utah Ct.App.1988) ("We . . . cannot ascertain from the record before us whether [the] proper [legal standard was applied], and, indeed, it appears that the court did not consider [the appropriate legal standard]. Therefore, because the trial court did not utilize [the proper legal standard], we find that the court erred. . . .").

¶ 15 Here, the record supporting a finding of without merit consists of proffered and actual testimony, a court-ordered custody evaluation, two GAL assessments, the repeated awarding of custody to Father, and various motions before the court. The record also includes the juvenile court's finding of *insufficient* evidence, rather than a finding

explicitly stating that the alleged abuse "did not occur, or that [Father] was not responsible for the abuse," *see* Utah Code Ann. § 62A–4a–101(35). In short, the factual findings leave us unclear as to which legal standard the juvenile court used to award Father attorney fees and costs. Therefore, we remand the issue to the juvenile court to make findings against the backdrop of the appropriate legal standard under rule 37 and to then enter whatever order is appropriate in view of those findings. *See Allred v. Allred,* 797 P.2d 1108, 1112 (Utah Ct.App.1990) ("We do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached.").[4]

## II. Immunity for Reporting Child Abuse

¶ 16 The Cammacks contend that Utah Code section 62A–4a–410(1) provides them with immunity from liability for attorney fees and costs. Section 62A–4a–410(1) provides that "[a]ny person . . . participating in good faith in making a report [of child abuse] . . . is immune from any liability, civil or criminal, that otherwise might result by reason of those actions." Utah Code Ann. § 62A–4a–410(1) (2006).

¶ 17 An ex parte petition for a child protective order, however, does not qualify as a "report" under the statute because a juvenile judge is not a "peace officer, law enforcement agency, or office of [DCFS]," *id.* § 62A–4a–403(1); *see Allen v. Ortez,* 802 P.2d 1307, 1310–11 (Utah 1990) (holding that a letter alleging abuse, sent by social workers to the mayor, did not qualify as a report under the predecessor statute of section 62A–4a–403). Therefore, the immunity afforded to those who report child abuse is not applicable to the Cammacks and their petition for a child protective order alleging child abuse.

## III. Reasonableness of Father's Attorney Fees and Costs

¶ 18 The Cammacks argue that Father's attorney fees and costs were unreason-

---

4. In the event the juvenile court determines to award attorney fees and costs, its findings should also include the court's reasons for exercising that option under the rule. *See* Utah R. Juv. P.

37(d) ("If the court finds that the [allegation of child abuse] is without merit, respondent's costs and attorney[] fees *may* be assessed against the petitioner." (emphasis added)).

able and that the juvenile court failed to adequately inquire into the reasonableness factors. "[T]he trial court has broad discretion in determining what constitutes a reasonable [attorney] fee...." *Dixie State Bank v. Bracken,* 764 P.2d 985, 991 (Utah 1988). Appropriate factors to consider in such a determination include the following:

> the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Salmon v. Davis County,* 916 P.2d 890, 893 (Utah 1996) (internal quotation marks omitted).

¶ 19 Father's counsel provided the juvenile court with several affidavits detailing the number of hours spent on the case, the nature of the work performed, and the hourly rate billed, comparing these charges with those of similarly skilled attorneys in the field. This is all that is necessary to prove the reasonableness of attorney fees and costs. *See R.T. Nielson Co. v. Cook,* 2002 UT 11, ¶ 21, 40 P.3d 1119. Father's attorney's preparation for the case, the juvenile court noted, "was extensive but cannot be characterized as unwarranted as the [Cammacks'] counsel states ..., since [Father] had lost temporary custody and needed to prepare to defend himself against allegation[s] of abuse." The juvenile court's failure to enunciate all of the reasonableness factors does not necessarily mean that all of those factors were not considered when the juvenile court explicitly requested and received affidavits regarding attorney fees and costs and considered the Cammacks' motions in response to Father's motions. *See Mojave Uranium Co. v. Mesa Petroleum Co.,* 22 Utah 2d 239, 244 n. 7, 451 P.2d 587, 591 n. 7 (1969) ("This court, in many cases has indulged the presumption that where the trial court did not make a specific finding on a particular phase of a case, that if such finding had been made it would be in harmony with the decision rendered." (citing *Mower v. McCarthy,* 122 Utah 1, 245 P.2d 224, 226 (1952))). Under the

circumstances, we see no abuse of discretion in the juvenile court's determination that Father's attorney fees and costs were reasonable and reasonably incurred.

## CONCLUSION

¶ 20 We remand to the juvenile court for the entry of findings against the backdrop of the statutory definition of without merit—that the alleged abuse "did not occur, or that [Father] was not responsible for the abuse," Utah Code Ann. § 62A–4a–101(35) (2006)—and, if appropriate, to determine Father's fees on appeal. We affirm the juvenile court's ruling that statutory immunity for the good faith reporting of child abuse is not applicable here, where the Cammacks' claim of immunity is based on a petition for an ex parte child protective order filed with a juvenile court judge. And if the juvenile court awards Father attorney fees and costs on remand after clearly applying the proper legal standard, we would affirm the juvenile court's finding that the attorney fees and costs were reasonable and reasonably incurred.

¶ 21 WE CONCUR: RUSSELL W. BENCH and GREGORY K. ORME, Judges.