315 P.2d 283

**Richard H. MORTENSEN and Alfred Tredway, Plaintiffs and Respondents,**

v.

**LIFE INSURANCE CORPORATION of America, a Utah corporation, Cleo H. Bullard, and Richard Don Cafferty and Charles P. Connally, Defendants and Appellants.**

No. 8551.

Supreme Court of Utah.

Aug. 28, 1957.

Reese C. Anderson, Peter M. Lowe, Salt Lake City, for appellants.

Clyde & Mecham, J. L. Barker, Jr., Salt Lake City, for respondents.

McDONOUGH, Chief Justice.

This is an appeal from a judgment for plaintiffs in an action for defamation.

The plaintiffs, Richard H. Mortensen and Alfred Tredway, hereafter referred to as Mortensen and Tredway, had been in the employ of the defendant, Life Insurance Corporation of America, referred to hereafter as Licoa, during the latter part of 1954, and had been licensed by the Insurance Department of the State of Utah to sell insurance for Licoa. During October, 1954, Mortensen and Tredway sought positions with a new company, Reliance National Life Insurance Company, which was in need of administrative officers. At a first meeting Frank B. Salisbury, president of Reliance National, discussed with them the possibility of their filling positions of joint agency directors which would have given them an override commission on all insurance sold by Reliance National. After mutual investigations, Mr. Salisbury at a second meeting with the plaintiffs entered into a discussion of the terms of a joint agency director's contract, and agreed to reduce the negotiations to writing at their third meeting.

Shortly after the second meeting in October, Licoa discovered the anticipated transfer, and ill-feelings developed. The officers of Licoa, Richard D. Cafferty and Cleo H. Bullard, also defendants and appellants herein, made statements that they would prevent plaintiffs from selling insurance in this state or in any other state. Also certain letters discrediting the plaintiffs had been solicited and obtained.

On October 11, 1954, Mortensen and Tredway resigned as agents for Licoa, and on October 15, 1954, defendant Bullard,

wrote the Insurance Commissioner a letter cancelling their licenses with Licoa. The part of the letter which the jury found defamatory reads as follows:

"Also please cancel with prejudice the licenses of Alfred B. Tredway and R. H. Mortensen, whose actions were not in the best interest of the company. Our books indicate an agency debit of $89.75 on R. H. Mortensen, and $428 on A. B. Tredway."

■ Although not sufficient to instigate affirmative action by the commissioner, the letter contained sufficient derogatory matter to cause Mr. Salisbury who had been informed of the letter to refuse to hire Mortensen and Tredway in the capacity of agency directors. Other insurance companies refused to hire Tredway at a subsequent time for the same reason. The plaintiffs were hired by Reliance National not as directors, but as agents with limited jurisdiction. The jury found in favor of Tredway and Mortensen, also finding the falsity and bad faith of the above letter. This finding is supported by the evidence.

Appellants urge that "It is the duty of the Insurer to preserve inviolate the integrity of insurance. A letter from an insurer to the Insurance Commissioner making charges against agents going to their eligibility to work under a license under a different company, should be absolutely privileged in the interest of public policy, and it was error for the trial judge to deny a motion to dismiss plaintiffs' complaint based upon a communication sent in the interest of insurance."

■■ There is no dispute that a privilege to publish defamation exists to protect a public or private interest recognized by the law to merit such protection. Such privilege falls into two classes: Absolute and qualified or conditional. The latter class is of no concern to us in this case, since the evidence supports the jury's finding of malice. Among the interests protected under absolute privilege include (1) judicial proceedings; (2) legislative proceedings; (3) proceedings of executive officers charged with an important responsibility. Prosser, Torts (2nd Ed.) p. 606; Restatement, Torts § 585, et. seq.

■ Prosser says regarding absolute privilege in judicial proceedings:

"The 'judicial proceeding' to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs judicial function, ex parte or otherwise, and whether the hearing is public or not. It extends to the proceedings of administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial, or 'quasi-judicial' in character." p. 609 f.

Applying the criteria there suggested, the question here narrows to that of whether the quoted portion of the letter was such as to invoke the discretionary power of the commissioner and hence be protected as privileged. Appellants cite Independent Life Ins. Co. v. Rodgers, 165 Tenn. 447, 55 S.W.2d 767, in support of their position that it does. However, in that case the letter was properly construed as a charge against Rodgers going to his eligibility to work for another company, and it initiated action by the commissioner. Two subsequent cases, the one involving a different fact situation and the other a different statute, have quoted with approval from that case: Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909 and Johnson v. Independent Life Ins. Co., Florida, D.C., 94 F.Supp. 959.

However, we are of the opinion that in the instant case the letter was not designed to invoke the quasi-judicial powers of the commissioner nor was it so construed. Section 31-17-10, U.C.A.1953, provides that appointments of insurance agents by insurers " * * * shall continue in force until * * * the appointment is revoked by the insurer by written notice of revocation filed with the commission * * *." Other sections deal with the initiations of hearings before the commissioner " * * * upon written demand for a hearing made by any person aggrieved by any act or threatened act or failure of the commis-

sioner to act. * * *" Section 31-4-1, U.C.A.1953. Also provided for is the calling of a hearing by the commissioner himself to require an agent to show cause why action should not be taken against him. Section 31-4-1(1), U.C.A.1953.

Commissioner Jones' testimony that he did not construe the letter as a complaint to initiate a hearing is supported by the wording of the letter itself. The act of the commissioner in revoking the license of plaintiffs at the request of the insurer should be construed as a ministerial act. The commissioner was required to terminate the license under Section 31-17-10 as soon as the written request for revocation was received.

In Grubb v. Johnson, 205 Or. 624, 289 P.2d 1067, 1074, the Oregon Supreme Court refused to allow an absolute privilege to a letter involving a much stronger complaint than the one involved in the instant case. In that case the letter from the insurer to the commissioner read in part as follows:

(After cancelling the agent's license and stating that the agent had misappropriated large amounts of money):

"It is my recommendation, based upon these misappropriations that Francis W. Grubb be denied any further license or privilege granted by the Insurance Commissioner of the State of Oregon."

The court both in distinguishing the Rodgers case and in rejecting its reasoning,

held that under Oregon statutes (similar to the Utah statutes) the revocation by the insurer was automatic and mandatory, acted upon by a pure ministerial act of the commissioner:

> "Upon the revocation, which occurred merely because of the termination of plaintiff's employment, there was no matter on which to exercise quasi judicial power, and would be none unless at some later time application should be made for a new license."

This implies that although the sole question before the commissioner was ministerial in nature, in the future event of an application for another license quasi-judicial power would then exist to determine whether a license should be granted. In the instant case the plaintiffs were licensed both by Licoa and by Reliance National, and thus the commissioner immediately could have taken jurisdiction to determine if licenses with Reliance National should also be revoked. The fact that the commissioner did not assume such jurisdiction, and our determination that the letter was not designed to nor effectual for the purpose of calling for a hearing as to any license other than that held under Licoa, places the question here very close to that involved in the Grubb case. The letter had reference only to the revocation of the Licoa license. The statements made other than the request to revoke were purely gratuitous.

Affirmed. Costs to respondents.

CROCKETT, WADE, WORTHEN and HENRIOD, JJ., concur.