Jeffery R. PRICE, an individual,
Plaintiff and Appellant,

v.

Edward B. ARMOUR, an individual, and
Sheet Metal Workers International As-
sociation Local Union No. 312, a labor
organization, Defendants and Appellees.

No. 960540.

Supreme Court of Utah.

Dec. 9, 1997.

Robert F. Babcock, Darrel J. Bostwick, Salt Lake City, for plaintiff and appellant.

Mary J. Woodhead, Salt Lake City, for defendants and appellees.

RUSSON, Justice:

Jeffery Price appeals from the trial court's grant of summary judgment to defendants Edward B. Armour and the Sheet Metal Workers International Association Local Union No. 312 ("the Union"). Price's suit alleged that defendants had made defamatory statements. In granting summary judgment, the trial court ruled that the statements in question were privileged against Price's claims of libel, libel per se, and intentional interference with business relations. We affirm.

## BACKGROUND

Armour, a member of the Union, sought employment in March of 1995 with Madsen Mechanical ("Madsen"), a sheet metal contractor. Madsen rejected his employment application. In April of 1995, Armour filed charges against Madsen with the National Labor Relations Board ("NLRB"), alleging that Madsen refused to hire Armour because of his union membership, in violation of the National Labor Relations Act. *See* 29 U.S.C. §§ 151 to 191. On June 9, 1995, the NLRB issued a complaint against Madsen based on the allegation of discrimination. Armour represented himself in this action, while Madsen was represented by attorney Jeffery Price.

In an attempt to encourage settlement of the pending NLRB matter, Armour tried to contact Price by telephone on June 12, 1995. Price, unaware that Armour was representing himself, did not respond to Armour directly, believing that the Utah Rules of Professional Conduct prohibited him from

directly contacting a party. Instead, Price faxed his response that same day to an attorney, Kathy Sure, who he believed was representing Armour. In a letter dated June 19, 1995, Sure informed Price that she did not represent Armour.

On that same day, Armour sent a letter to Madsen on Union letterhead that contained the heading "RE: Settlement of NLRB cases...." In that letter, Armour sought settlement of the case and in doing so made comments about Price and his representation of Madsen. In part, he wrote:

> I attempted to contact your attorney, Mr. Jeffery Price.... Mr. Price refused to answer my calls. He has instead chosen to fax a letter to an attorney in California who does not in any way represent our interests.... It is my understanding that Mr. Price represents, and has represented in the past a number of companies who have lost cases before the NLRB, and lost big. I would hope that Mr. Price truly represents your wishes, as delay on your part to settle will result in a dramatic increase in the damage awards with regards to backpay should the ALJ rule against you at the hearing in March. While it may or may not be in Mr. Price's best financial interest to prolong such matters, it is my belief that these matters could be settled far in advance of the March, 1996 hearing. Mr. Price's delay, or attempt at obfuscation will only result in higher costs to you should the ALJ rule against you.
>
> It is my duty, and experience to inform you that the National Labor Relations Board does not typically issue complaint [sic] unless it believes there to be sound evidence of Unfair Labor Practices. It is also my experience that the National Labor Relations Board encourages the interested parties to settle before the hearing.

Price filed a civil complaint based on these comments in state court on June 18, 1996,

against Armour and the Union, alleging libel, libel per se, and intentional interference with business relations. He sought damages of not less than $20,000 plus punitive damages. In response, Armour and the Union[1] moved to dismiss and for summary judgment, with a supporting memorandum. Armour argued that the comments in the letter were privileged because they were made in the course of, and in reference to, a judicial proceeding. He also argued that Price's claims should be dismissed for failure to plead essential elements. Finally, Armour requested a hearing on the matter.

On July 30, 1996, Price filed a memorandum in opposition to Armour's motion to dismiss and for summary judgment, arguing that the comments were not privileged as to defamation because they were not relevant to the proceeding at hand. He further argued that the privilege did not apply against a claim of intentional interference with business relations.[2]

The trial court granted Armour's request for hearing and set the hearing for November 25, 1996. However, on November 8, 1996, prior to the scheduled hearing, the trial court ruled on the matter, granting Armour's motion for summary judgment. The trial court held that the privilege applied inasmuch as the comments in the letter were in reference to the pending judicial proceedings and that the privilege applied to both the claims of libel and the claim of intentional interference with business relations. Price appealed to this court.

Price argues on appeal that the trial court erred in granting summary judgment without a hearing. He states that the court granted a hearing pursuant to rule 4–501(3) of the Utah Code of Judicial Administration and then, without holding the hearing or explaining why it did not hold a hearing, granted Armour's motion. Price points out that rule 4–501(3) requires the court to grant a re-

---

1. Armour and the Union were represented by the same attorney with regard to Price's suit and hereinafter are collectively referred to as Armour.

2. Price also argued in his memorandum before the trial court that the Union could not claim the protection of the privilege because it was not a party to the proceeding at the time the comments were made. The trial court held that the Union was a party to which the privilege applied. This was not raised as an issue on appeal, nor was it argued in plaintiff's brief.

quest for a hearing if the motion before the court involves an issue that has not been authoritatively decided. He argues that a hearing was necessary because the issue of whether the judicial proceeding privilege protects against a claim of intentional interference with business relations is an issue of first impression and therefore inappropriate for summary judgment without hearing.

Price also argues on appeal that the court erred in granting the motion for summary judgment on the merits. He argues that the comments in the letter were not relevant to the NLRB proceeding in that they were not made in reference to, or in the course of, a judicial proceeding and therefore were not privileged. He contends that the statements were "couched in an alleged settlement letter but not related to settlement." Instead, he claims the letter was an "attempt to defame Price and intimidate Madsen," having nothing to do with the allegations of discrimination and therefore not related to settlement.

Price further argues that even if the statements are privileged, the court erred in ruling that the privilege protects against a cause of action for intentional interference with business relations. Price claims that there is no Utah case law that supports the trial court's ruling and, consequently, it erroneously relied on a California case that is distinguishable on the facts. He contends that the privilege simply does not apply to the intentional interference claim.

In response, Armour argues that Price waived his right to a hearing inasmuch as he failed to request one in the first place. Armour requested the hearing, and therefore, he contends, he is the only party who can object for failure to hold a hearing. He also argues that the comments were absolutely privileged because they were made in the course of a judicial proceeding. He asserts that the communication in question need not be relevant as an evidentiary matter but need only have some relation to the proceeding. The letter, Armour claims, was clearly an attempt to settle the NLRB matter, and comments as to the opposing counsel's record and his lack of incentive to settle were clearly related to settlement and therefore "in reference to the proceeding."

Armour further argues that the privilege applies to both the libel claims and the claim of intentional interference with business relations.

In the alternative, Armour claims that summary judgment was also appropriate on grounds other than those relied upon by the trial court. He argues that Price's complaint should be dismissed because Price failed to properly plead damages with respect to his intentional interference with business relations claim.

The first issue before us is whether the trial court erred in granting summary judgment without holding a hearing. The second issue is whether the court erred in ruling that the privilege applied to this communication and, if it applied, whether it protects against a claim of intentional interference with business relations as well as a claim of libel. The third issue is whether summary judgment should be affirmed on the alternative ground of insufficient pleadings. Since we decide this case on the first two issues, we do not reach the third issue, concerning insufficient pleadings.

### THE STANDARD OF REVIEW

■ The question of whether the court erred in granting summary judgment without a hearing is governed by rule 4–501(3) of the Utah Code of Judicial Administration and is therefore a matter of statutory construction which is reviewed for correctness. *State v. Petersen*, 810 P.2d 421, 424 (Utah 1991). The existence of a privilege is a question of law for the court, which we review for correctness, giving no deference to the trial court's determination. *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896 (Utah 1992).

### ANALYSIS

■ Rule 4–501(3) governs whether a hearing shall be granted on a motion before the court. In relevant part, it states:

(a) A decision on a motion shall be rendered without a hearing *unless* ordered by

the Court, or *requested by the parties* as provided in paragraphs (3)(b) or (4) below.

(b) In cases where the granting of a motion would dispose of the action or any issues in the action on the merits with prejudice, either party at the time of filing the principle memorandum in support of or in opposition to a motion may file a written request for a hearing.

(c) *Such request shall be granted unless* the court finds that (a) the motion or opposition to the motion is frivolous or (b) that the dispositive issue or set of issues governing the granting or denial of the motion has been authoritatively decided.

(d) When a request for a hearing is denied, the court shall notify the requesting party. When a request for a hearing is granted, the court shall set the matter for hearing or notify the requesting party that the matter shall be heard and the requesting party shall schedule the matter for hearing and notify all parties of the date and time.

Utah Code of Judicial Admin. Rule 4–501(3) (emphasis added).

In the case at hand, the trial court granted Armour's request for a hearing in accordance with rule 4–501, cited above, and set the hearing date for November 25, 1996. On November 8, before the scheduled hearing, however, the trial court granted summary judgment in favor of Armour, basing its ruling only on the memoranda and affidavits of the parties.

The language of rule 4–501(3)(c) clearly required that the trial court grant Armour's request for a hearing unless either of the two exceptions applied. The exceptions provided that if the dispositive issues governing the granting or denial of the motion had been authoritatively decided or the request for a hearing was frivolous, then a hearing was not required. Nothing in the record indicates that the court found any aspect of the motion frivolous. Likewise, the relevant issues had not been authoritatively decided. Indeed, the issue of whether the judicial proceeding privilege applies against a claim of intentional interference with business relations is one of first impression in this state. Because neither of the two statutory exceptions was present in this case, the trial court was re-quired to grant a hearing before ruling on this issue.

■ The trial court did, indeed, grant Armour's request and set the matter for hearing in compliance with rule 4–501. However, it did not actually hold the hearing. Instead, it ruled on the motion before the hearing date. This was a clear violation of the rule. This rule, which requires that a hearing be granted, necessarily includes the requirement that the hearing actually be held. Any other interpretation would render this rule meaningless and without effect.

■ But Armour argues that he, not Price, requested the hearing and he is not objecting to the court's failure to hold it. However, rule 4–501 states that if the granting of a motion would dispose of the action, "either party ... may file a written request for hearing" and the same shall be granted and set for hearing. Once a request for hearing by one of the parties has been granted and the matter set for hearing, the other party has a right to rely upon such setting regardless of whether it made its own request. The trial court erred in not holding the hearing it had granted pursuant to rule 4–501.

■ For such error to compel reversal of the trial court's substantive ruling, however, it must have been prejudicial. If the error was harmless, that is, if the error was sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the case, then a reversal is not in order. *State v. Robertson,* 932 P.2d 1219, 1227 (Utah 1997).

■ The substantive issue before the trial court was purely one of law, i.e., was the letter written by Armour to Madsen written in the course of and in reference to a judicial proceeding and therefore privileged. Price has not shown that he was prejudiced by the trial court's ruling on the motion without a hearing. He has not shown that he would have made new or additional arguments at the hearing that were not covered by his memorandum of points and authorities. Indeed, on appeal to this court the arguments made by Price in his appellate brief and during oral argument are the same argu-

ments that he made in his memorandum before the trial court. We conclude that the failure of the trial court to hold a hearing in this case was harmless.

As to the second issue, this court must determine (1) whether Armour's statements in the letter were privileged as to claims for libel, and (2) whether the privilege applies to claims for intentional interference with business relations.

■■■■ A privilege protects those who make otherwise defamatory statements from legal liability. Absolute privileges are granted to those whose position or status requires that they be free from liability stemming from their actions. An absolute privilege is granted to participants in judicial proceedings. The policy behind such privilege is to encourage full and candid participation in judicial proceedings by shielding the participant from potential liability for defamation. In *Allen v. Ortez,* 802 P.2d 1307, 1311 (Utah 1990), we stated:

> One of the absolute privileges is that granted to participants in judicial proceedings. The general rule is that judges, jurors, witnesses, litigants, and counsel in judicial proceedings have an absolute privilege against defamation. *See* 50 Am. Jur.2d *Libel & Slander* § 231 (1970); W. Prosser & P. Keeton, [*The Law of Torts*] § 114. This privilege is premised on the assumption that the integrity of the judicial system requires that there be free and open expression by all participants and that this will only occur if they are not inhibited by the risk of subsequent defamation suits.

That case, which dealt with absolute privilege as it pertained to participants who were *witnesses* in judicial proceedings, stated:

> "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."

*Id.* at 1311 (quoting Restatement (Second) of Torts § 588 (1977)). An earlier case, *Beezley v. Hansen,* 4 Utah 2d 64, 286 P.2d 1057 (1955), dealing with the scope of an *attor-*

*ney's* absolute privilege, also quoted the Restatement:

> "An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of a judicial proceeding in which he participates as counsel, if it has some relation thereto."

286 P.2d at 1058 (quoting Restatement of the Law of Torts, vol. 3, § 586, at 229–30). The case before us pertains to the scope of a *litigant's* absolute privilege. The Restatement sets forth the scope of a litigant's absolute privilege as follows:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Restatement (Second) of Torts § 587 (1977).

■■■■ In *Ortez,* we set out the necessary elements for the application of the judicial proceeding privilege. 802 P.2d at 1313. Three elements must be satisfied for allegedly defamatory statements to qualify for an absolute privilege: (1) The statement must have been made during or in the course of a judicial proceeding; (2) the statement must have some reference to the subject matter of the proceeding; and (3) the statement must have been made by someone acting in the capacity of judge, juror, witness, litigant, or counsel. *Id.*

■■■■ The first element requires examination of whether the statement was made *during or in the course of* a judicial proceeding. The Restatement of Torts states that the absolute privilege to publish a defamatory matter can occur in communications preliminary to a proposed judicial proceeding as well as during the course of or as part of a judicial proceeding if the matter has some relation to the proceeding. As stated in 50 Am.Jur.2d *Libel and Slander* § 302 (1997):

The doctrine of absolute privilege applies to defamatory statements made in the institution or conduct of litigation or in conferences or other communications preliminary to litigation.

Indeed, many courts have specifically held that attempts at settlement, including defamatory statements made in settlement letters, are privileged as part of the judicial proceeding privilege. *Petty v. General Accident Fire & Life Assurance Corp.*, 365 F.2d 419, 421 (3d Cir.1966) (in context of privilege, "the negotiation of a settlement is a part of a judicial proceeding"); *Larmour v. Campanale*, 96 Cal.App.3d 566, 158 Cal.Rptr. 143 (1979) (judicial proceeding privilege was applicable to letters demanding settlement of claim); *Pape v. Reither*, 918 S.W.2d 376, 380 (Mo.Ct.App.1996) (holding that "defamatory statement in the 'Settlement' letter is also privileged as a statement made in an ongoing judicial proceeding"); *Romero v. Prince*, 85 N.M. 474, 513 P.2d 717, 720 (N.M.Ct.App. 1973) (settlement letter is privileged, even though it does not invoke any function of the court or its officers and is not contained in pleadings or briefs); *Zirn v. Cullom*, 187 Misc. 241, 63 N.Y.S.2d 439, 440 (Sup.Ct.1946) (where letter encouraging settlement was deemed privileged).

In the case before us, Armour's letter to Madsen was not merely preliminary to a proposed judicial proceeding but was specifically written in regard to the *pending* NLRB proceeding between Armour and Madsen. The letter specifically referred to the NLRB case by number and name. The text of the letter dealt with the pending proceedings and a desire to settle. Clearly, the statement was made in the course of a proceeding before the NLRB.

■ The requirement that the proceeding at hand be "judicial" has been commonly interpreted to include all proceedings of a judicial or quasi-judicial nature. Indeed, we acknowledged in *Mortensen v. Life Insurance Corp.*, 6 Utah 2d 408, 315 P.2d 283 (1957), that the judicial proceedings privilege includes statements made during or in the course of administrative proceedings:

> "The 'judicial proceeding' to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs judicial function, ex parte or otherwise, and whether the hearing is public or not. *It extends to the proceedings of administrative officers, such as boards* and commissions so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or 'quasi-judicial' in character."

315 P.2d at 284 (emphasis added) (quoting Prosser, *The Law of Torts* 609 (2d ed.); *see* 50 Am.Jur.2d *Libel and Slander* § 303 (1995); William L. Prosser & W. Page Keeton, *The Law of Torts* § 114 (5th ed.1984); *see also Thompson v. Community Nursing Serv. & Hospice*, 910 P.2d 1267, 1268 (Utah Ct.App.1996). Therefore, even though the matter was pending before the NLRB in an administrative proceeding, the judicial proceeding privilege still applies. Since the settlement letter was written in the course of a judicial proceeding, the first element of *Ortez* was satisfied. Price does not argue this point.

■ The second element requires that the statement have some reference to the subject matter of the proceeding. Price contends that Armour's comments about Price's ability to adequately represent his client are irrelevant to the proceeding and therefore are not "in reference" to the subject matter of the case. Instead, he argues, Armour's comments were intended to injure "Price's business reputation" and to "intimidate and defraud Madsen into settlement."

Armour's letter to Madsen was clearly an attempt to settle the NLRB case. It was entitled "Settlement of NLRB Cases 27–CA–13753, –2, –3, –4, ... *Sheet Metal Workers International Association, Local 312 VS. Madsen Mechanical Inc. . . . .*" The last sentence of the first paragraph states, "It is my wish to settle these matters in a manner agreeable to both of us, so that we might both move on to our respective endeavors." The rest of the letter is an attempt by Armour to show the strength of his position vis-a-vis the weakness of Madsen's position which included his perceived weakness of Madsen's lawyer. The letter pointed out the advantage to Madsen if the case were to settle

immediately. Discussions of the likelihood of success are very common in settlement negotiations. The statements in the letter were intended to bring about immediate settlement of the pending NLRB matter and were relevant to that end. They were made in "reference to the subject matter" and therefore met the second privilege element.

The third and final element of the judicial proceeding privilege requires that the party claiming the privilege was acting in the capacity of judge, juror, witness, litigant, or counsel. The trial court held that Armour was a litigant in the NLRB proceeding and therefore his statements in the settlement letter were privileged. The trial court also held that the same privilege applied to the Union because it had been represented as a party to the proceeding in all documents pertaining to the case. This issue was not raised on appeal. Thus, the third element is met.

Having met all three elements of the judicial proceedings privilege, Armour's statements in the settlement letter were privileged and thus immune from Price's libel actions. The trial court was correct in so holding.

 Having determined that the comments were privileged as to the defamation claims, the question remains as to whether the privilege applies against the claim of intentional interference with business relations.[3]

The whole purpose of the judicial privilege is to ensure free and open expression by all participants in judicial proceedings by alleviating any and all fear that participation will subject them to the risk of subsequent legal actions. There is no reason to distinguish statements that may defame a person from statements that may interfere with that person's business relations. The purpose of the judicial privilege remains the same. Holding that a defamatory statement made during a judicial proceeding is absolutely privileged but then holding that the privilege does not apply to the claim that the statement inter-

fered with a business relation would defeat the very purpose of the privilege and would chill free and open expression in the judicial setting.

In *Russell*, 842 P.2d at 896, a case involving claims of defamation, invasion of privacy, and intentional infliction of emotional distress against a newspaper, we stated:

> An additional concern is whether the qualified privilege of [the statute] applies only to a claim for defamation or whether it also applies to other claims based on the same operative facts such as emotional distress and invasion of privacy. Joining several courts that have directly dealt with this issue, we think that the privilege does apply to other claims that are based upon defamatory publication.

*Id.* at 896 n. 37.

That reasoning is sound and applicable here. Participation in a judicial proceeding will be inhibited unless all claims arising from the same statements are protected. It is essential that the privilege apply to all claims arising from the same allegedly defamatory statements in order to encourage full and free participation in judicial and administrative proceedings. We therefore hold that the judicial proceeding privilege protects against Price's claim for intentional interference with business relations.

## CONCLUSION

We conclude that the statements in question were made in the course of a judicial proceeding and in reference to the subject matter of that proceeding and therefore were absolutely privileged. We further conclude that the privilege extends to the claim of intentional interference with business relations as well as to the claim of defamation. We also conclude that the failure of the trial court to conduct a hearing did not constitute prejudicial error.

We affirm.

3. We do not determine whether a claim of intentional interference with business relations has been properly pled. We decide only the applica-

tion of the absolute privilege to the tort of intentional interference with business relations where it has been properly pled.

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.

STEWART, Associate C.J., concurs in the result.