**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AARON PETERSON,

    Plaintiff - Appellant,

v.

XPO LOGISTICS, INC.,

    Defendant - Appellee.

No. 17-4189
(D.C. No. 2:17-CV-00307-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

This case concerns Utah's judicial proceedings privilege—specifically,

whether an exception to the privilege applies to allegedly fabricated emails that form

the basis of a plaintiff's complaint. Plaintiff-Appellant Aaron Peterson was an

employee of Defendant-Appellee XPO Logistics, Inc. After Peterson left XPO to

work at a competitor, XPO sued both him and the competitor. During the course of

the underlying litigation, XPO transmitted emails to the competitor that purported to

prove Peterson's breach of his employment contract. After receiving the emails, the

competitor fired Peterson.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Peterson then sued XPO for defamation, tortious interference, false light, injurious falsehood, and statutory identity theft. The emails transmitted from XPO to the competitor form the basis of Peterson's complaint: he alleges the emails were fabricated and were sent by XPO to the competitor in an attempt to secure a better settlement position. XPO moved to dismiss Peterson's complaint, and the district court granted the motion. It found that Utah's judicial proceedings privilege protected the emails sent during the course of settlement discussions and that Peterson failed to state a claim. Though the district court acknowledged that an exception to the privilege exists for fraud, it declined to apply the exception to the allegedly fabricated emails.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

**I.**

Peterson was an employee of XPO until June 2015. He left XPO to work at Leeway Global Logistics, LLC, a competitor of XPO in the third-party logistics industry. On September 29, 2015, XPO sued both Leeway and Peterson in the District of Utah in a diversity action, alleging that Peterson breached the confidentiality, non-solicitation, and non-competition covenants of his employment agreement with XPO. XPO also alleged that both Peterson and Leeway misappropriated XPO's trade secrets and that Leeway tortiously interfered with Peterson's employment agreement with XPO.

In the underlying litigation, Leeway moved to dismiss the complaint. After a hearing on the motion, Leeway and XPO began settlement negotiations. During the

2

course of those negotiations, XPO sent allegedly fabricated emails to Leeway.

Peterson asserts that the emails "suggest that [Peterson] had violated the restrictive

covenants in his employment agreement with XPO by recruiting XPO customers and

employees and also suggest [Peterson] had conspired with XPO employees to

damage XPO." Aplt. Br. at 4.

The emails contain several alleged discrepancies suggesting they were

fabricated. First, the date on one of the emails states "Monday, April 19, 2016" when

in fact April 19, 2016 was a Tuesday. App'x at 10. Further, the email address listed

for Peterson is inconsistent between the original email and the reply, though

presumably any email program should have automatically generated an identical

address for the reply. Finally, based on the email timestamp, the reply email appears

to have been sent several hours before the original email. Leeway relied on the

representations in these emails and believed them to be evidence of Peterson's breach

of his XPO employment agreement. After receiving the emails through XPO's

attorneys, Leeway terminated Peterson's employment.

Peterson filed the instant case against XPO in the District of Utah—where the

underlying lawsuit was heard—alleging defamation, tortious interference, false light,

injurious falsehood, and identity theft in connection with the publication of the

emails by XPO's attorneys. XPO filed a Motion to Dismiss pursuant to Rule

12(b)(6). The district court granted the motion and "dismisse[d] Peterson's entire

3

[c]omplaint based[1] on the judicial proceedings privilege," finding that the allegedly fabricated emails satisfied all three criteria for the privilege under Utah law. App'x at 150–51. And though the court acknowledged a "bad faith fraud exception to the" privilege, it declined to apply this exception because "Peterson d[id] not assert a fraud claim." *Id*. at 150.

## II.

This court reviews the district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). In reviewing a motion to dismiss, we must accept all well-pleaded facts, as opposed to conclusory allegations, as true and view them in the light most favorable to the nonmoving party. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005). To affirm the district court's grant, we must determine that the complaint at issue fails to include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Utah judicial proceedings privilege is "intended to promote the integrity of the adjudicatory proceeding and its truth finding processes." *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1165 (Utah 2012) (quoting *Pratt v. Nelson*, 164 P.3d 366, 381 (Utah 2007)). It protects participants in the judicial

---

[1] Though the district court "based [its dismissal] on the judicial proceedings privilege," it separately concluded that "Peterson's defamation claim also fail[ed] as a matter of law because he [did] not . . . allege that one or more of the email statements relating to him were actually defamatory." App'x at 151. Peterson does not appeal the district court's dismissal of his defamation claim.

4

process from liability for statements made during an official proceeding. *See Krouse v. Bower*, 20 P.3d 895, 898 (Utah 2001). To be protected by the privilege, statements at issue must be (1) "made during or in the course of a judicial proceeding"; (2) "have some reference to the subject matter of the proceeding"; and (3) be "made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *DeBry v. Godbe*, 992 P.2d 979, 983 (Utah 1999) (quoting *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997)).

The privilege protects not only judicial participants' statements, but also their *conduct*. *See Moss*, 285 P.3d at 1168. In *Moss*, after an attorney entered an individual's home while executing a discovery order, the individual subsequently sued the attorney for abuse of process, invasion of privacy, and trespass. *Id*. at 1161–62. Affirming the lower court, the Utah Supreme Court found that the attorney's actions were protected from suit, holding that "the judicial proceedings privilege in Utah extends to attorneys' *conduct*, as well as statements." *Id*. at 1168 (emphasis added).

In addition to extending the privilege to protect *conduct*, the *Moss* court noted an exception to the judicial proceedings privilege, the scope of which is at issue in the case before us. The exception is that "where an attorney has committed fraud or otherwise acted in bad faith . . . the privilege will not shield an attorney from civil liability." *Id*. at 1166.

Peterson claims that the *Moss* exception applies here to remove XPO's allegedly fabricated emails from the privilege's protection. The district court

5

disagreed, reasoning that because Peterson did not bring a specific fraud claim, the *Moss* exception did not apply. Separately, XPO argues that even if Peterson did bring a fraud claim, the emails would still be protected by the privilege because the "fraud or bad faith" exception in *Moss* applies only to attorneys, and not to parties.[2]

The treatment of *Moss*—by the district court in its judgment and by XPO in its arguments—raises two questions about the scope of the "fraud or bad faith" exception to the Utah judicial proceedings privilege. First, does *Moss* require the complaining party to specifically assert a fraud claim to trigger the exception to the privilege? And second, does the exception for "fraud or bad faith" in *Moss* apply to parties in addition to attorneys?

### III.

Based on past rulings from the Utah Supreme Court,[3] we conclude that the Utah judicial proceedings privilege does not protect the allegedly fabricated emails.

---

[2] XPO did not raise this issue below but instead argued only that Peterson failed to sufficiently plead a fraud claim. While we have discretion to affirm on any ground supported by the record, we disfavor affirming on grounds not considered by the district court. *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011) ("Although this court may affirm on any ground apparent in the record, affirming on legal grounds not considered by the trial court is disfavored."). The dissent suggests that the district court did consider the "party vs. attorney" issue because it stated in its order granting XPO's motion to dismiss that "[t]he privilege does not shield a *party* from civil liability if it committed fraud or acted in bad faith." App'x at 149 (emphasis added). But we do not think this sentence shows that the lower court considered the "party vs. attorney" issue. We instead think it merely shows that the court acknowledged that there was a general fraud exception to the privilege.

[3] "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Nelson v. United States*,

We find that complaining parties need only allege facts showing bad faith to trigger the *Moss* exception to the Utah judicial proceedings privilege. We also conclude that the *Moss* exception applies to parties in addition to attorneys.

**A.**

The *Moss* exception to the Utah judicial proceedings privilege does not require the complaining party to formally claim fraud or bad faith. In *Moss*, the Utah Supreme Court stated that "where an attorney has committed fraud *or* otherwise acted in bad faith, . . . the privilege will not shield an attorney from civil liability." 285 P.3d at 1166 (emphasis added). The *Moss* court did not require complaining parties to file specific claims of fraud or bad faith in order to trigger the exception, but instead inferred that parties need only "ple[ad] sufficient facts" demonstrating fraudulent or bad faith conduct. *See id*. at 1167 (noting that to determine if the plaintiff's tort claims triggered an exception to the Utah judicial proceedings privilege, the court must "examine whether [the plaintiffs] have ple[aded] sufficient facts").

And here, Peterson pleaded facts[4] suggesting that the opposing party either "committed fraud or otherwise acted in bad faith." *Id*. at 1166. He points to several indicators showing that emails sent from XPO to Leeway were either fabricated or

___

915 F.3d 1243, 1248 (10th Cir. 2019) (internal quotation marks omitted) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002)).

[4] When reviewing the lower court's granting of a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the nonmoving party. *Beedle*, 422 F.3d at 1063.

7

falsified.  Such falsification of evidence, if proven, would surely amount to bad faith and would thus be sufficient to trigger the *Moss* exception.

XPO argues that Peterson failed to include facts necessary to satisfy a key element of fraud: that the party damaged by the fraudulent misrepresentation must be the same party that relied on the misrepresentation.  Aple. Br. at 22 (citing *Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980)).  XPO argues that the facts in Peterson's complaint fail to satisfy this element because Peterson was the person damaged by the allegedly fabricated emails, while Leeway was the party that relied on them.  Indeed, Peterson's alleged facts might suggest that XPO or its counsel committed *third-party* fraud (where the damaged party is different from the relying party), but Utah courts have not yet recognized such claims.  Resolving this issue would therefore require our court to rule on another issue of Utah law.

However, because we conclude that Peterson pleaded facts sufficient to show bad faith, we need not determine whether the facts also sufficiently showed fraud.  Again, the *Moss* exception can be triggered not only if someone "committed fraud," but also if they "otherwise acted in bad faith."  *Moss*, 285 P.3d at 1166.  Because we conclude that the allegedly fabricated or falsified emails demonstrate bad faith, the *Moss* exception would apply regardless of whether the emails also constitute fraud.

**B.**

Additionally, we find that the *Moss* "fraud or bad faith" exception to the Utah judicial proceedings privilege applies not only to attorneys, but also to parties.  XPO argues that the exception is narrow because the *Moss* court mentioned only

8

"attorneys" in its opinion. *Id.* ("[W]here an *attorney* has committed fraud or otherwise acted in bad faith . . . the privilege will not shield [them]." (emphasis added)). But we do not read the *Moss* exception to be so limited.

The Utah Supreme Court has found that the judicial proceedings privilege applies to all participants in the judicial process. *See Krouse*, 20 P.3d at 898; *DeBry*, 992 P.2d at 983; *Price*, 949 P.2d at 1256 (citing different sections of the Restatement of Torts to show that the privilege applied to each type of judicial participant); *Allen v. Ortez*, 802 P.2d 1307, 1311 (Utah 1990). In *Allen v. Ortez*, the Utah Supreme Court recognized that the privilege applied to "judges, jurors, witnesses, litigants, and counsel in judicial proceedings" because "the judicial system requires that there be free and open expression by *all participants*." 802 P.2d at 1311 (emphasis added) (citing 50 Am. Jur. 2d Libel & Slander § 231 (1970)).

Because the judicial proceedings privilege applies to all participants of the litigation, it follows that the "fraud or bad faith" exception to the privilege should also apply to all participants. It is true that the Utah Supreme Court in *Moss* only mentioned "attorneys" when articulating the "fraud or bad faith" exception. *Moss*, 285 P.3d at 1166. But the court did not provide any reasoning as to why the exception would not apply to other types of judicial participants. Indeed, the entire

9

discussion in *Moss* at that point revolved around attorneys because the party asserting the privilege there was an attorney.[5]

Our conclusion that the "fraud or bad faith" exception applies to all judicial participants is further supported by XPO's interpretation of a separate issue in *Moss*. XPO relies on *Moss* to assert that the judicial proceedings privilege protects not only a party's statements during a proceeding, but also a party's *conduct*. Aple. Br. at 8. But just like it did with the "fraud or bad faith" exception, the *Moss* court only referenced "attorneys" when finding that the scope of the privilege protected *conduct* in addition to statements. *Moss*, 285 P.3d at 1168 ("We . . . hold that the judicial proceedings privilege in Utah extends to *attorneys'* conduct, as well as statements." (emphasis added)). Despite this, XPO claims that the "conduct vs. statement" holding in *Moss* also applies to *parties*, and not just to attorneys. *See* Aple. Br. at 8.

_____

[5] The dissent contends that *Moss* applies only to attorneys because "[a]n attorney's duties to his client and to the court differ vastly from the duties of a party, and *Moss* provides no analysis of a party's duties or the ways in which a party could act outside of its capacity as a litigant." Dissent at 4. But while it is true that litigants do not have the same responsibilities as attorneys do, Utah recognizes that litigants who initiate and maintain lawsuits for abusive, "ulterior purpose[s]" can be liable in tort for abuse-of-process claims. *See Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974). And Utah law also sanctions litigants who act in bad faith during litigation. *See* Utah Ann. Code § 78B-5-825. The dissent disagrees, and contends that *Cline v. State*—where the court found that the judicial proceedings privilege barred a fraud claim against a witness based on her in-court testimony—suggests that Utah would not expand exceptions to the judicial proceedings privilege. Dissent at 5 (citing 142 P.3d 127, 138 (Utah Ct. App. 2005), *cert. denied*, 133 P.3d 437 (Utah 2006)). But *Cline* does not discuss any exception to the judicial proceedings privilege. 142 P.3d at 138–39. Moreover, *Cline* was decided seven years before Utah articulated the bad-faith exception in *Moss*. Accordingly, the Utah Court of Appeals' decision in *Cline* provides little insight as to how the Utah Supreme Court would interpret this case in light of *Moss*.

But we do not see why the *Moss* court's "conduct vs. statement" holding should be applied broadly while its similarly-worded "fraud or bad faith" exception should be applied narrowly.

We disagree with the dissent's suggestion that Peterson failed to make a sufficient showing that the "fraud or bad faith" exception should also apply to parties. Dissent at 1–2. The dissent relies on *SCO Group., Inc. v. IBM*, 879 F.3d 1062 (10th Cir. 2018) for the proposition that Peterson "must, at a minimum, cite a controlling case on point" to justify expanding the exception. *Id*. at 2 (citing *SCO Group*, 879 F.3d at 1083). According to the dissent, the only controlling case on point here would be a Utah case that analyzes the "precise issue before us." *See id*. at 3. But we do not interpret *SCO Group*'s dicta so narrowly. *SCO Group* does not explain[6] what a "controlling case on point" would entail, but it does cite *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017) for support. And significantly, *Belnap* does not require a controlling case on point. While *Belnap* acknowledges that we are "reticent to expand state law without clear guidance from [the state's] highest court," it nonetheless asserts that, "when an appeal presents an unsettled question of state law, we must ordinarily 'attempt to predict how [the] highest court would interpret [the issue].'" *Belnap*, 844 F.3d at 1295 (quoting *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284

---

[6] A "controlling case on point" could simply mean any "indication" that the Utah Supreme Court would rule a certain way on the issue at hand. Immediately before noting that the plaintiff had not cited a "controlling case on point," this court in *SCO Group* stated that it found "no *indication* in Utah case law that the state supreme court would accept . . . an expansive interpretation" of the tort law at issue. *SCO Group*, 879 F.3d at 1083 (emphasis added).

11

(10th Cir. 2013) then *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 852 (10th Cir. 2015)).

Indeed, if a precise, on point case were required—as the dissent seems to suggest—there would be no occasion for us ever to have to attempt to predict how the state's highest court would interpret the issue. [7]

Here, then, we attempt to predict what the Utah Supreme Court would do in this instance by looking at the closest case, *Moss*. And here, *Moss* provides guidance—by describing its approach to enforcing the judicial proceedings privilege—indicating that it would apply the "fraud or bad faith" exception to parties as well as attorneys. When examining the scope of the judicial proceedings privilege, the Utah Supreme Court "look[s] to the policies underlying" the privilege. *Moss*, 285 P.3d at 1165. These policies are to "promote the integrity of the adjudicatory proceeding and its truth finding processes," *id.* (quoting *Pratt*, 164 P.3d at 381), and to encourage "candid, forthright settlement communications." *Krouse*, 20 P.3d at 899.[8] It would surely frustrate these policies to protect fabricated documents simply because they were generated by parties, rather than by attorneys. To conclude otherwise would

---

[7] To be clear, we are not choosing to ignore *SCO* and instead follow earlier Tenth Circuit precedent from *Belnap*. We simply think that *SCO* is not clear on what a "controlling case" means and does not explicitly assert that a controlling case is required. Moreover, *Belnap*, the published opinion that is the basis for *SCO*, is much clearer on the parameters of our inquiry—and those parameters do not require a controlling case.

[8] We understand that the privilege is designed to "alleviat[e] any and all fear that [judicial] participation will subject [participants] to the risk of subsequent legal actions." *Price*, 949 P.2d at 1258. However, the privilege is "not without limits." *Moss*, 285 P.3d at 1166.

12

allow litigants like XPO to avoid allegations of fraud or bad faith merely because the allegedly fabricated material was transmitted as part of settlement negotiations.

Accordingly, we find that the emails underlying Peterson's claims against XPO are not privileged.

**IV.**

For the reasons stated above, we REVERSE the district court's grant of XPO's motion to dismiss and REMAND to the district court with instructions to conduct further proceedings consistent with this opinion.

Entered for the Court

Allison H. Eid
Circuit Judge

No. 17-4189, *Peterson v. XPO Logistics, Inc.*
**BRISCOE**, Circuit Judge, dissenting.

I respectfully dissent. In my view, Peterson has failed to make a strong showing that the Utah Supreme Court would extend the fraud or bad faith exception to the judicial proceedings privilege to also apply to parties.[1] I would therefore affirm the district court's grant of XPO's motion to dismiss, without reaching the question of whether Utah law requires Peterson to assert a fraud claim to trigger the exception.

In this case, Peterson asks a federal court to apply a new legal principle under state law. The Utah Supreme Court has held that an *attorney's* fraud or bad faith falls outside of the protection of the judicial proceedings privilege. *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1166 (Utah 2012). But Peterson acknowledges that "[t]he question here" is one that the Utah Supreme Court has not specifically addressed: "whether the same rule that excludes attorney bad faith from the privilege also applies to parties." Aplt. Rep. Br. at 4.

---

[1] The majority states that this issue was not considered by the district court, Maj. O&J at 6 n.2, even though the district court explicitly held that the exception to the judicial proceedings privilege extends to apply to parties. *See* Aplt. App. at 149 (the district court citing *Moss* for the proposition that "[t]he privilege does not shield *a party* from civil liability if it committed fraud or acted in bad faith") (emphasis added). To the extent that the district court did not fully consider this issue, "we have discretion to affirm on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006) (quotations omitted). Whether the *Moss* exception applies to parties is the central question presented by this appeal, as indicated by the parties' extensive briefing of the issue. *See, e.g.*, Aplt. Br. at 9–10; Aple. Br. at 11–13; Aplt. Rep. Br. at 4–7.

"[W]hen an appeal presents an unsettled question of state law, we must ordinarily 'attempt to predict how the highest court would interpret the issue.'" *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1295 (10th Cir. 2017) (alterations omitted) (quoting *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 852 (10th Cir. 2015)). Further, "we are generally reticent to expand state law without clear guidance from its highest court." *Id.* (quotations omitted). When, as in this case, "a party encourag[es] a federal court to apply a new legal principle under state law," the party "must make a 'strong showing' that the highest court of that state would adopt that principle if presented with the question." *SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, 879 F.3d 1062, 1082 (10th Cir. 2018) (quoting *Belnap*, 844 F.3d at 1295). To make a "strong showing" that the Utah Supreme Court would adopt his theory, Peterson must, at a minimum, cite a controlling case on point. *See id.* at 1083 ("At the very least, because [the plaintiff] has not cited any controlling case on point, it has failed to make a 'strong showing' that the Utah Supreme Court would validate this theory if presented with the issue.").[2] Despite acknowledging that

---

[2] The majority criticizes *SCO Group*'s requirement that a party seeking to expand state law must cite a controlling case on point. *See* Maj. O&J at 12 (stating that we would have no occasion to predict how a state's highest court would rule if an "on point case were required"). Regardless of whether the majority agrees with *SCO Group*'s holding, this panel is bound by it. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Further, unlike the majority, I cannot read *SCO Group*'s controlling case requirement to mean that Peterson must show only an "indication" that the Utah Supreme Court would adopt his theory. Maj. O&J at 11 n.6. To be sure, the plaintiff in *SCO Group* failed to cite a controlling case on point, and there was no indication that the Utah Supreme Court would adopt the plaintiff's theory. 879 F.3d at 1083. But just because both were true does not mean that the terms are synonymous. Regardless, Peterson has presented neither.

2

*Moss* did not address the precise issue before us, the majority concludes that *Moss* controls. I respectfully disagree.

In *Moss*, the Utah Supreme Court noted that "the judicial proceedings privilege is not without limits." 285 P.3d at 1166. In discussing how "the privilege can be lost," *Moss* analyzed only attorney conduct. *Id.* The court held, first, that "[w]here a plaintiff pleads that *an attorney* has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's, the privilege can be lost." *Id.* (emphasis added, quotations omitted). Second, it held that "where *an attorney* has committed fraud or otherwise acted in bad faith, which is *inherently acting in a manner foreign to his duties as an attorney*, the privilege will not shield *an attorney* from civil liability." *Id.* (emphasis added, quotations omitted). *Moss* said nothing about whether, or how, the exception would apply to other participants in the litigation, such as parties, witnesses, or jurors.

Yet Peterson argues, and the majority concludes, that XPO's argument limiting *Moss*'s holding to attorneys "rests on a distinction that makes no difference." Aplt. Rep. Br. at 6. In my view, *Moss* suggests otherwise. To be protected by the judicial proceedings privilege, an individual must be "*acting in the capacity of* judge, juror, witness, litigant, or counsel." *Krouse v. Bower*, 20 P.3d 895, 898 (Utah 2001) (emphasis added, quotations omitted). *Moss* explained that an attorney committing fraud or bad faith no longer acts in his capacity as an attorney, and therefore falls outside of the scope of the privilege, *because* he is "acting in a manner foreign to his duties as an attorney." 285 P.3d at 1166 (quotations omitted). *Moss*'s narrow analysis of an exception to the

3

privilege therefore cannot apply to all participants in the litigation, as the majority

suggests. An attorney's duties to his client and to the court differ vastly from the duties

of a party, and *Moss* provides no analysis of a party's duties or the ways in which a party

could act outside of its capacity as a litigant. Thus, *Moss* does not control the issue

before us.[3]

Despite *Moss*'s narrow holding, the majority concludes that the *Moss* exception is

not "so limited." Maj. O&J at 9. The majority points out that the Utah Supreme Court

has held that the privilege applies to all participants in the litigation. *Id.* (citing *Allen v.*

*Ortez*, 802 P.2d 1307, 1311 (Utah 1990)).[4] From this proposition, the majority makes a

leap. The majority states, without citation to any authority, that "it follows" that the fraud

or bad faith exception to the privilege should also apply to all participants. *Id.* Utah

courts, however, have held the opposite: that fraud claims against certain participants in

litigation are, indeed, barred by the judicial proceedings privilege.

---

[3] It may be true, as the majority reasons, that the discussion in *Moss* centered on attorneys because the party asserting the privilege in that case was an attorney. But I do not see how that fact should result in our extending the *Moss* exception to also apply to a party.

[4] While the Utah Supreme Court has held that the privilege applies to all participants in the litigation, it has never held that the privilege applies *equally* to each participant. The Utah Supreme Court has analyzed, in separate cases: (1) how the "privilege . . . pertained to participants who were *witnesses* in judicial proceedings"; (2) "the scope of an *attorney's* absolute privilege"; and (3) "the scope of a *litigant's* absolute privilege." *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997) (emphasis in original) (noting that a different section of the Restatement of Torts applied to each type of participant). What follows, therefore, is that the scope of the fraud or bad faith exception likewise depends on a participant's role in the litigation.

4

For instance, in *Cline v. State*, 142 P.3d 127, 138 (Utah Ct. App. 2005), *cert. denied*, 133 P.3d 437 (Utah 2006), the Utah Court of Appeals held that the privilege barred a plaintiff's claim for fraud against a *witness* who allegedly perjured herself.[5] In *Cline*, the plaintiff alleged that the defendant, an investigator with the Division of Child and Family Services, "provided false testimony while under oath during several hearings." *Id.* at 131. The plaintiff sued the defendant "for *fraud*, libel, and slander." *Id.* at 138 (emphasis added). The trial court dismissed the plaintiff's claims as barred by the judicial proceedings privilege, and the Utah Court of Appeals affirmed. *Id.* (holding that "[t]he trial court correctly concluded that [the defendant] was absolutely immune from [the plaintiff's] claims for fraud, libel, and slander . . . based on her in-court testimony" under the judicial proceedings privilege). Because Utah has held that the privilege bars fraud claims against witnesses (*Cline*), but that it does not bar fraud claims against attorneys (*Moss*), the majority errs in concluding that Peterson has made a strong showing that the fraud or bad faith exception applies to all participants in the litigation.

---

[5] "[W]hen we apply state law, we follow the opinions of an intermediate state appellate court unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.*, 890 F.3d 1195, 1200 (10th Cir. 2018) (quotations omitted). Given that the Utah Supreme Court denied certiorari in *Cline*, and that *Moss* involved only *attorney* misconduct, I see no indication that the Utah Supreme Court would decide otherwise. Although it is true that *Cline* was decided before *Moss*, the majority fails to explain how *Moss* indicates that the Utah Supreme Court would disagree with *Cline*'s holding. And if the majority is correct that *Cline* provides "little insight" as to what the Utah Supreme Court would do in this case, Maj. O&J at 10 n.5, then we are left "without clear guidance from [Utah's] highest court." *Belnap*, 844 F.3d at 1295 (quotations omitted).

Finally, the majority concludes that various policy justifications support an extension of the fraud or bad faith exception. *See* Maj. O&J at 12. While I do not disagree with the majority that the Utah Supreme Court *could* conclude that certain policy arguments justify an extension of the fraud or bad faith exception to apply to all participants in the litigation, that is not enough for this court to expand state law. When, as here, a party "encourag[es] a federal court to apply a new legal principle under state law," *SCO Grp.*, 879 F.3d at 1082, the party must, at a minimum, cite a controlling case on point, *id.* at 1083. The majority also overlooks the "whole purpose" of the privilege: "to ensure free and open expression by all participants in judicial proceedings by alleviating *any and all fear* that participation will subject them to the risk of *subsequent legal actions*." *Price*, 949 P.2d at 1258 (emphasis added). The majority's expansion of the fraud or bad faith exception to the privilege opens the door to a host of derivative lawsuits against parties and other participants in litigation. If the exception applies to all participants, little remains of the privilege.

Utah's judicial proceedings privilege is of "extraordinary scope." *Moss*, 285 P.3d at 1167 (quotations omitted). As a federal court sitting in diversity, we should be "reticent to expand state law" to create an exception to the privilege "without clear guidance from [Utah's] highest court." *Belnap*, 844 F.3d at 1295 (quotations omitted). The majority extends Utah's fraud or bad faith exception to the judicial proceedings privilege to apply to all participants despite a lack of clear guidance from the Utah Supreme Court, and despite contrary authority from the Utah Court of Appeals. I would affirm the district court's grant of XPO's motion to dismiss.

6